IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

MICHAEL F.,

      **Plaintiff,**

**v.**                                   **Case No.: 3:25-cv-00407**

**FRANK BISIGNANO,**
**Commissioner of the**
**Social Security Administration,**

      **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381-1383f. The matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending are Plaintiff's Motion for Judgment on the Pleadings and supporting brief, and the Commissioner's Brief in Support of Defendant's Decision seeking judgment on the pleadings. (ECF Nos. 6, 7, 15).

The undersigned has fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Judgment on the Pleadings, (ECF No. 7), be **DENIED**; the Commissioner's request for judgment on the pleadings, (ECF No. 15), be **GRANTED**; the Commissioner's decision

1

be **AFFIRMED**; and this case be **DISMISSED** and removed from the docket of the Court.

## I.    Procedural History

On May 12, 2022, Michael F. ("Claimant") protectively filed for DIB and SSI, alleging a disability onset date of April 22, 2019, due to "osteoarthritis of the neck, back, hands and knees; learning disability; chronic fatigue; GERD; spurs on spine; bipolar; depression; anxiety; insomnia; and chronic pain from fracture in right foot and ankle." (Tr. at 231, 235, 299) (cleaned up). After the applications were denied at the initial and reconsideration levels of review, Claimant requested an administrative hearing, which was held before an Administrative Law Judge (the "ALJ") on June 12, 2024. (Tr. at 32-64). During the hearing, Claimant amended his alleged onset date to August 15, 2021, and withdrew his DIB claim. (Tr. at 35-36). By written decision dated July 26, 2024, the ALJ noted that Claimant's date last insured was in 2019 (which occurred before his amended alleged onset date). (Tr. at 14). Thus, the ALJ dismissed Claimant's request for a hearing regarding the DIB claim and considered only the pending SSI application in the decision. (*Id.*). The ALJ concluded that Claimant was not disabled as defined by the Social Security Act. (Tr. at 14-26). The ALJ's decision became the final decision of the Commissioner on May 14, 2025, when the Appeals Council denied Claimant's request for review. (Tr. at 1-6).

Claimant timely filed the present civil action, seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner subsequently filed a Transcript of the Administrative Proceedings. (ECF No. 5). Claimant filed a Motion for Judgment on the Pleadings and Brief in Support, and the Commissioner filed a Brief in Support of Defendant's Decision. (ECF Nos. 6, 7, 15). The reply period expired. Thus, the matter is

2

ripe for resolution.

## II.   **Claimant's Background**

Claimant was 50 years old on his amended alleged onset date and 52 years old on the date of the ALJ's decision. (Tr. at 25). He communicates in English, has a GED, and previously worked as a mechanic and laborer/janitor. (Tr. at 298, 300, 301).

## III.   **Summary of ALJ's Decision**

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. § 416.920(a)(4). The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* § 416.920(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* § 416.920(c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* § 416.920(d). If so, then the claimant is found disabled and awarded benefits.

3

However, if the impairment does not meet or equal a listed impairment, the adjudicator must assess the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* § 416.920(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 416.920(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, in the fifth and final step of the process, that the claimant is able to perform other forms of substantial gainful activity, given the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. § 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d. 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. § 416.920a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* § 416.920a(b). If an impairment exists, the ALJ documents his findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. § 416.920a(c). Third, after rating the degree of

4

functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* § 416.920a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* § 416.920a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id.* § 416.920a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* § 416.920a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. § 416.920a(e)(4).

Here, at the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since the amended alleged onset date. (Tr. at 16, Finding No. 1). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: lumbar degenerative disc disease; pulmonary emphysema; obesity; bipolar disorder; anxiety and obsessive-compulsive disorder;

borderline intellectual functioning; somatic symptoms disorder; and depressive disorder. (*Id.*, Finding No. 2). Under the third inquiry, the ALJ assessed that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 17, Finding No. 3).

Accordingly, the ALJ determined that Claimant possessed:

[T]he residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; never climb ladders, ropes, and scaffolds; should avoid concentrated exposure to extreme cold, extreme heat, wetness, and vibration; should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation; should avoid all hazards such as unprotected heights, moving machinery, and commercial driving; can understand, remember and carry out simple instructions, with no speed-based production quotas, such as assembly line work; can deal with occasional changes in the work setting; can make occasional work-related decisions; and can have occasional interaction with coworkers and the public.

(Tr. at 19, Finding No. 4).

At the fourth step, the ALJ determined that Claimant had no past relevant work. (Tr. at 24, Finding No. 5). Therefore, under the fifth and final inquiry, the ALJ assessed Claimant's age and education in combination with his RFC to determine his ability to engage in substantial gainful activity, concluding that there were other jobs that existed in significant numbers in the national economy that Claimant could perform. (Tr. at 25-26, Finding Nos. 6-9). Consequently, the ALJ decided that Claimant was not disabled as defined by the Social Security Act. (Tr. at 26, Finding No. 10).

## IV.   Claimant's Challenges to the Commissioner's Decision

Claimant asserts three challenges to the Commissioner's decision, arguing that the ALJ: (1) failed to properly develop the record; (2) did not adequately account for the combined effects of his impairments; and (3) improperly evaluated the medical opinion evidence, including the opinions of his treating provider and the state agency consultants.

(ECF No. 6 at 10-20).

In response, the Commissioner asserts that the ALJ satisfied the duty to develop the record and that Claimant has not identified any evidentiary gaps requiring further development. (ECF No. 15 at 5-7). The Commissioner further contends that the ALJ properly considered Claimant's impairments in combination and appropriately evaluated the opinion evidence, and that the decision is supported by substantial evidence. (*Id.* at 7-13).

## V.    **Relevant Evidence**

The undersigned has reviewed all of the evidence before the Court. Included below is a summary of the evidence that is pertinent to the discussions in this PF&R.

### *A. Treatment Records*

On January 6, 2022, Claimant presented to Cabell Huntington Hospital Pain Management, complaining of dull, aching low back pain extending through his hips, buttocks, and thigh, predominantly on the left. (Tr. at 481-82). He was diagnosed with lumbar spondylosis, sacroiliac joint dysfunction, and trochanteric bursitis. (Tr. at 482-83).

The following month, on February 8, 2022, Claimant reported shortness of breath on exertion, dizziness, muscle aches, and cold sweats during a Valley Health visit. (Tr. at 528). His active problem list included arthralgias of multiple sites; lumbago with sciatica; major depressive disorder, recurrent, moderate; generalized anxiety disorder; bipolar disorder; osteoarthritis; and primary insomnia. (Tr. at 529). His treatment plan included starting Advair and continuing ProAir. (Tr. at 531). On March 8, 2022, Claimant continued to report shortness of breath, and his provider increased his dosage of Prozac to 40 mg due to psychological symptoms. (Tr. at 533, 535).

On May 3, 2022, Claimant presented for anxiety management. (Tr. at 537). He was stable on medication and in no acute distress. His was taking Advair, bupropion, hydroxyzine, ibuprofen, lidocaine patches, Prozac, and trazodone to treat his diagnoses of GERD, vitamin D deficiency, low back pain, major depressive disorder, recurrent, and generalized anxiety disorder. (Tr. at 537-39). Several months later, on October 4, 2022, Claimant reported aches and pains, including back and knee pain, and stated that inhalers had improved his breathing. (Tr. at 594). He also reported that he was doing well on Prozac and therapy, although his mother's death had affected him. (*Id.*).

On February 6, 2023, Claimant reported obsessive-compulsive symptoms, depression, anxiety, and panic attacks and stated that his depression was not well controlled. (Tr. at 608). He reported attending therapy approximately every three weeks and continued to report back pain that was treated with lidocaine patches. (*Id.*). On April 3, 2023, Claimant described sharp back pain aggravated by bending, prolonged sitting and standing, and household activities, and he also reported neck pain worsened by movement. (Tr. at 631). The note referenced degenerative disc disease and arthritic changes. (*Id.*). On April 15, 2024, Claimant reported joint aches, pains, and lower back pain and was diagnosed with chronic left-sided low back pain with left-sided sciatica. (Tr. at 673).

### B. Consultative Examinations

On January 10, 2023, Claimant underwent a consultative physical examination performed by Stephen Nutter, M.D. (Tr. at 563). Claimant reported lower back pain for four years that was constant and radiated down his left leg. (*Id.*). He stated that his back pain was aggravated by bending, sitting, standing, lifting, and walking. (*Id.*). Claimant also reported constant neck pain for three years, numbness and tingling in both hands,

and intermittent joint pain affecting the shoulders, elbows, wrists, hands, hips, knees, ankles, and feet. (*Id.*).

On examination, Claimant appeared in no acute distress and was comfortable in both the sitting and supine positions. (Tr. at 564). He had tenderness of the cervical paraspinal muscles, pain with cervical range of motion testing, tenderness of the lumbar paraspinal muscles, and back pain with lumbar range of motion testing. (*Id.*). Straight leg raise testing was normal in both the sitting and supine positions. (*Id.*). Claimant ambulated with a normal gait, did not require a handheld assistive device, was unable to walk on his heels, could walk on his toes, and could squat with knee and hip pain. (*Id.*). Dr. Nutter assessed chronic cervical strain, chronic lumbar strain, and arthralgia. (Tr. at 565).

On January 12, 2023, Claimant underwent a consultative psychological evaluation. (Tr. at 575). He reported that pain and functional limitations, obsessive-compulsive traits, depression or mood instability, and a history of learning difficulties were the primary reasons he was unable to work. (Tr. at 576). Claimant's subjective symptoms included paranoia, religious preoccupation, auditory hallucinations, depression, hopelessness, tearfulness, prior suicidal ideation, episodes of improved mood, difficulty sleeping, difficulty staying on task, increased energy, racing thoughts, impulsive spending, obsessive-compulsive tendencies related to cleanliness, and chronic pain that disrupted his social and occupational functioning. (*Id.*).

Claimant confirmed that he completed the ninth grade, participated in special education classes, and later obtained a GED. (Tr. at 577). Testing placed Claimant's general intellectual functioning in the borderline range, with a full-scale IQ score of 75. (Tr. at 578). His working memory was in the borderline range, and his processing speed

was in the extremely low range. (Tr. at 579-80). On mental status examination, Claimant was cooperative, maintained good eye contact, demonstrated coherent and connected speech, and was oriented to person, time, place, and circumstance. (Tr. at 581). His concentration was mildly impaired, memory and persistence were within normal limits, pace was slow, and social functioning during the evaluation was mildly impaired. (Tr. at 581-82). The evaluator diagnosed unspecified bipolar and related disorder with psychotic features; unspecified obsessive-compulsive and related disorder; somatic symptom disorder with predominant pain, moderate; alcohol use disorder in sustained remission; stimulant use disorder, cocaine type, in sustained remission; and borderline intellectual functioning. (Tr. at 582).

### C. Opinion Evidence

On February 17, 2023, Paul Chevalier, Psy.D., completed a treatment summary noting that Claimant was diagnosed with bipolar affective disorder, bereavement, generalized anxiety disorder, and obsessive-compulsive disorder. (Tr. at 585). Claimant reported persistent symptoms of depression, including loss of interest, sleep disturbance, social isolation, decreased energy, and appetite fluctuations, as well as ongoing anxiety with restlessness, fatigue, difficulty concentrating, irritability, and sleep disturbance. (*Id.*). He also described time-consuming obsessions and compulsions causing significant distress. (*Id.*). Dr. Chevalier indicated that these symptoms resulted in significant impairment in daily functioning, social functioning, and occupational functioning, and that Claimant participated in psychotherapy every two to three weeks. (*Id.*).

On June 4, 2024, Dr. Chevalier provided an updated treatment summary reflecting the same diagnoses and noting that Claimant continued to experience depression, anxiety, and obsessive or intrusive thoughts. (Tr. at 738). Claimant reported ongoing

10

symptoms including depressed mood, sleep disturbance, social isolation, decreased energy, and excessive anxiety with associated restlessness, fatigue, irritability, and difficulty concentrating. (*Id.*). Dr. Chevalier indicated that these symptoms caused significant impairment in daily functioning, social functioning, and occupational functioning, and that Claimant had difficulty completing tasks and goals. (*Id.*). He further noted that Claimant continued psychotherapy every two to four weeks and recommended continued treatment and medication management. (*Id.*).

### D. Prior Administrative Findings

The state agency medical consultants found that Claimant could perform light exertional work with occasional postural activities. (Tr. at 84, 96). No manipulative, visual, or communicative limitations were assessed, but the consultant found that Claimant should avoid concentrated exposure to extreme cold, extreme heat, wetness, and vibration and avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, and hazards. (Tr. at 84-85, 96).

The state agency psychological consultants found that Claimant was not significantly limited in remembering locations and work-like procedures, understanding and remembering very short and simple instructions, and carrying out very short and simple instructions. (Tr. at 84-86, 94). The consultants assessed moderate limitations in understanding and remembering detailed instructions, carrying out detailed instructions, maintaining attention and concentration for extended periods, completing a normal workday and workweek without interruptions from psychologically based symptoms, interacting appropriately with the general public, accepting instructions and responding appropriately to criticism from supervisors, and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. at 85-86, 94). Overall,

11

the consultants concluded that Claimant remained capable of learning and performing simple tasks in a setting without speed-based production quotas, with simple, infrequent work-related decisions, and with only occasional interaction with coworkers and the public. (Tr. at 86, 94).

### E.  Hearing Testimony

At the administrative hearing, Claimant testified that he last worked in 2018, and his past work included employment as a mechanic and janitorial work, which required lifting. (Tr. at 40-41). Claimant testified that he was unable to work due to a combination of mental and physical impairments. (Tr. at 41). He reported back pain that radiated into his left leg and caused numbness. (Tr. at 41-42). He expressed that he could walk approximately one block, sit for 15 to 20 minutes before needing to stand, stand for 10 to 15 minutes before needing to sit, and lift approximately five to eight pounds. (Tr. at 41-42, 46).

Claimant also described obsessive-compulsive behaviors, including washing his hands multiple times. (Tr. at 42). Claimant testified that he experienced anxiety in public settings, which caused him to feel nervous and short of breath and to leave stores. (Tr. at 42-43). He further reported depression and anxiety that affected his sleep, energy, and concentration. (Tr. at 44).

Claimant testified that he had difficulty understanding, remembering, and applying information. (Tr. at 45). He also reported that his medications caused drowsiness and dizziness and that he needed to lie down during the day for relief of back pain. (Tr. at 46-47). Due to fatigue, he had to lie down approximately every two hours. (Tr. at 49-50). He further testified that he had a history of special education and low intellectual functioning and that he needed to reread information and had difficulty

12

retaining it. (Tr. at 47-48). Claimant also testified that he experienced frequent bowel movements due to diverticulitis, requiring multiple bathroom breaks and occasionally causing accidents. (Tr. at 48-49).

Claimant's father also testified during the hearing. (Tr. at 52). He stated that Claimant lived with him and had difficulty being around others and preferred to isolate himself. (Tr. at 52-53). He further testified that Claimant had ongoing back problems, that his condition worsened after he stopped working, and that he had difficulty with social interaction. (Tr. at 53). He also attested that Claimant had memory problems and required reminders for appointments and medication. (Tr. at 55-57). He stated that Claimant appeared fatigued and had difficulty retaining information and required assistance managing daily activities. (*Id.*). He further reported that Claimant required frequent bathroom use and experienced back pain with prolonged sitting and bending. (*Id.*).

## VI.    **Standard of Review**

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock*, 483 F.2d at 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled.

13

*Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Instead, the Court's role is limited to ensuring that the ALJ followed applicable Regulations and Rulings in reaching his decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

## VII.  Discussion

### A. Duty to Develop the Record

Claimant argues that the ALJ failed to properly develop the record. (ECF No. 6 at 10-12). An ALJ has a duty to ensure that the record is adequately developed to permit meaningful judicial review. *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). This duty exists even when a claimant is represented by counsel, but it is not unlimited and does not require the ALJ to act as the claimant's advocate. *Id.*

Rather, the claimant bears the burden of proving disability and must demonstrate that the record is insufficient and that additional development was necessary. *Johnson v. Barnhart*, 434 F.3d 650, 656 (4th Cir. 2005). To establish reversible error, a claimant must identify specific evidentiary gaps and show that the absence of additional evidence resulted in prejudice. *Id.* This standard requires more than a generalized assertion that the record could have been more complete; the claimant must point to concrete deficiencies and explain how those deficiencies undermined the ALJ's decision. *Id.*

Here, the record reflects that the ALJ considered medical evidence spanning the relevant period, including treatment records addressing Claimant's physical and mental impairments. (Tr. at 481-83, 528-39, 594, 608, 631, 673). The record also includes consultative examinations evaluating Claimant's physical and psychological functioning.

14

(Tr. at 563-65, 575-82). In addition, the ALJ considered opinion evidence from treating and reviewing sources, as well as prior administrative medical findings. (Tr. at 84-86, 95-96, 585, 738). The record further includes Claimant's testimony regarding his symptoms and functional limitations, along with testimony from his father. (Tr. at 39-57). Collectively, this evidence provided a longitudinal view of Claimant's conditions and functional abilities sufficient to permit an informed decision.

Claimant has not identified any specific missing records or explained what additional evidence that the ALJ should have obtained. (ECF No. 6 at 10-12). In addition, Claimant does not demonstrate how any additional development would have changed the outcome of the decision. *Johnson*, 434 F.3d at 656. In the absence of a specific evidentiary gap and resulting prejudice, the Court cannot conclude that the ALJ failed to fulfill her duty. Accordingly, the undersigned **FINDS** that the ALJ adequately developed the record and that Claimant has failed to demonstrate reversible error on this basis.

### B. Combination of Impairments

Claimant contends that the ALJ failed to properly consider the combined effects of his impairments. (ECF No. 6 at 12-16). An ALJ must consider the combined effects of a claimant's impairments, both severe and non-severe, throughout the disability determination process. 20 C.F.R. § 416.923(c). The decision must reflect that the ALJ evaluated whether the claimant's impairments, in combination, meet or medically equal a listed impairment and how those impairments affect the claimant's RFC. *Walker v. Bowen*, 889 F.2d 47, 49-50 (4th Cir. 1989). However, an ALJ is not required to use any particular language or format, so long as the decision demonstrates that the combined effects of the impairments were considered. *Brown v. Astrue*, No. 5:10-cv-00065, 2011 WL 5118428, at *6 (W.D. Va. Oct. 27, 2011).

15

In this case, the ALJ expressly stated that Claimant did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. at 17-19). This statement directly addresses the regulatory requirement to consider impairments in combination at step three. The decision further reflects that the ALJ evaluated Claimant's physical and mental impairments together in assessing the RFC, including limitations related to both exertional and non-exertional functioning. (Tr. at 19-24). In doing so, the ALJ incorporated restrictions that account for Claimant's physical complaints, such as back pain and related conditions, as well as his mental impairments, including depression, anxiety, and obsessive-compulsive symptoms. (Tr. at 16-24). The RFC reflects limitations addressing both Claimant's physical and mental impairments, demonstrating that the ALJ considered their combined effects.

Moreover, the ALJ's narrative discussion reflects an ongoing evaluation of the combined impact of Claimant's impairments throughout the decision, rather than a compartmentalized analysis. The ALJ did not merely list impairments separately, but instead discussed the evidence in a manner that reflects how Claimant's symptoms interact and affect his overall functioning. (Tr. at 16-24). Nothing in the decision suggests that the ALJ considered Claimant's impairments in isolation or failed to account for their combined effects.

Claimant does not identify any additional limitation that would have been warranted had the ALJ considered his impairments differently, nor does he point to evidence demonstrating that the combined effects of his impairments met or equaled a listing or required greater restrictions than those included in the RFC. Instead, his argument invites the Court to re-weigh the evidence and draw a different conclusion from the same record considered by the ALJ.

Accordingly, the undersigned **FINDS** that the ALJ adequately considered the combined effects of Claimant's impairments and that Claimant has not demonstrated reversible error.

### C. Opinion Evidence

Claimant argues that the ALJ improperly evaluated the opinion evidence and substituted her own judgment for that of medical sources. (ECF No. 6 at 16-17). For claims filed after March 27, 2017, the ALJ does not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. 20 C.F.R. § 416.920c(a). Instead, the ALJ evaluates the persuasiveness of medical opinions and prior administrative medical findings by considering factors that include supportability and consistency. *Oakes v. Kijakazi*, 70 F.4th 207, 212-13 (4th Cir. 2023); 20 C.F.R. § 416.920c(b)(2), (c)(1)-(2). A reviewing court may not re-weigh conflicting evidence or substitute its judgment for that of the Commissioner. *Hays*, 907 F.2d at 1456.

The ALJ expressly discussed the consultative psychological evaluation, Dr. Chevalier's February 2023 statement, Dr. Chevalier's June 2024 treatment summary, and the prior administrative medical findings. (Tr. at 21-24). The ALJ noted that the January 12, 2023, consultative psychological evaluation documented symptoms of depression and anxiety, a tearful affect, mildly impaired concentration, slow pace, and mildly impaired social functioning, while also documenting coherent and connected speech, intact orientation, normal memory, and normal persistence. (Tr. at 22, 581-82). The consultative evaluator diagnosed unspecified bipolar and related disorder with psychotic features; unspecified obsessive-compulsive and related disorder; somatic symptom disorder with predominant pain, moderate; alcohol use disorder in sustained remission;

17

stimulant use disorder, cocaine type, in sustained remission; and borderline intellectual functioning. (Tr. at 21-22, 582).

The ALJ also discussed Dr. Chevalier's February 17, 2023, statement. (Tr. at 22). That statement reported diagnoses of bipolar affective disorder, bereavement, generalized anxiety disorder, and obsessive-compulsive disorder and identified symptoms that included depression, sleep disturbance, social isolation, decreased energy, anxiety, irritability, and difficulty concentrating. (Tr. at 585). The ALJ further considered Dr. Chevalier's June 4, 2024, treatment summary. (Tr. at 22, 24). In that summary, Dr. Chevalier again reported diagnoses of bipolar affective disorder, bereavement, generalized anxiety disorder, and obsessive-compulsive disorder and stated that Claimant continued to experience depression, anxiety, obsessive or intrusive thoughts, and impairment in daily, social, and occupational functioning. (Tr. at 738).

The ALJ did not ignore those records. Rather, the decision reflects that the ALJ considered them alongside the consultative findings, treatment history, and prior administrative findings in determining what limitations were supported by the record as a whole. (Tr. at 21-24). Although Dr. Chevalier identified ongoing symptoms and functional difficulty, the ALJ was not required to adopt Claimant's preferred interpretation of those records or translate the existence of symptoms into greater work-related restrictions absent support in the overall evidence.

The ALJ also considered the prior administrative findings from the state agency reviewers. (Tr. at 23-24). The consultants found that Claimant could perform light work with postural and environmental limitations, and he remained capable of learning and performing simple tasks in a setting without speed-based production quotas, with simple,

18

infrequent work-related decisions, and with only occasional interaction with coworkers and the public. (Tr. at 84-86, 94, 96).

The RFC ultimately adopted by the ALJ limited Claimant to light work with postural and environmental restrictions and further limited him to simple instructions, no speed-based production quotas, occasional changes in the work setting, occasional work-related decisions, and occasional interaction with coworkers and the public. (Tr. at 19). Those restrictions correspond to the impairments and symptoms discussed in the decision, including Claimant's physical complaints, mental health symptoms, intellectual functioning, and social limitations. (Tr. at 21-24).

The decision therefore reflects that the ALJ did not ignore the opinion evidence or replace it with lay speculation. (Tr. at 21-24). Instead, the ALJ evaluated the opinion evidence alongside the treatment notes, consultative findings, and prior administrative findings and explained the limitations that were supported by the record. (Tr. at 21-24). Claimant's argument amounts to a request that the Court re-weigh the evidence and credit the opinion evidence differently. (ECF No. 6 at 16-17). The substantial evidence standard does not permit the Court to engage in such analysis. *Hays*, 907 F.2d at 1456.

Accordingly, the undersigned **FINDS** that the ALJ properly evaluated the medical opinion evidence and that Claimant has not demonstrated reversible error on this ground.

## VIII.  Recommendations for Disposition

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **DENY** Plaintiff's request for judgment on the pleadings, (ECF No. 7); **GRANT** the Commissioner's request for judgment on the pleadings, (ECF No. 15); **AFFIRM** the decision of the Commissioner;

**DISMISS** this action, with prejudice, and remove it from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Thomas v. Arn*, 474 U.S. 140 (1985); *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Chambers, and Magistrate Judge Reeder.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED**: April 27, 2026

Joseph K. Reeder
United States Magistrate Judge

20